Good morning, Ms. Shawn Mill on behalf of Appellant Charles Hayes and I'd like to reserve two minutes of my time and may it please the court. This case represents a systematic failure that led to a disabled black man being detained in Kern County on a mistaken identity. Mr. Hayes was a subjected to not being afforded minimum due process. And the district court erred when it granted summary judgment to the Kern County officials. And the reason why the court erred is because the Kern County officials had readily available means to correct that misidentification within less than 24 hours if they would have chosen to do so. Counsel, I'm sorry. Yeah, I just I want to direct you specifically to your claims against Harrell. Now, she was the booking clerk, as I as I remember. Presumably, she was supposed to do something to confirm your client's identity. What evidence was there that she that that she was confronted with to alert her on the identity issue? In the record, she during the booking process, she was Mr. Hayes actually made note that he was not Devon Robinson. And at that time, during the booking process with the arresting officers, Callwater and Banks, she was present during that process. And they all laughed at Mr. Hayes and said that showed an ID. And in that record, the site is between 330. Exit of the record, page 336 and 349, where they laughed and joked about all black people look a lot while looking at a photo of Mr. Robinson and held it up to his face. And that's a part of the notion of why this court did not take that as a reasonable inference to say to the officers that were part of the arresting officers, Banks, Callwater, as well as the booking clerk of taking this claim of misidentification serious. And this is important because at the time of the arrest or at the pickup time, we the plaintiff, we submit that the officers did not have readily information and that it was a valid warrant presented at the jail. But after protests of the claims of innocence that triggered a at least a minimum minimum moment to alert everyone in the jail. And the reason aside from aside from the protest, was there any physical differences between the individuals, the individual in the picture and that the that officer had to the one presented in front of him? So the picture at issue was the booking picture, and it would have showed Mr. Robinson at a 511. Charles Hayes is a small stature of five, about five inches shorter. And he weighs 180 pounds in the picture and he was 40 pounds lighter. And the reason why I bring that up is also because that picture was a black and white photo. As you know, this dark skin, both members were dark skin and the fact that that there was no potential vehicle to see it. I think that's enough to at least say there's some maybe something's wrong here and that we should allow because I want to make sure I understand the argument you're saying that one, because he protested, number one, number two, because he was five inches shorter than the picture and three, because he was 40 pounds lighter than the individual, that that should have triggered an additional investigation by Officer Harrell. Is that what you're saying? Yes, Your Honor. I'm actually saying that the booking clerk should have at least informed the other people that are responsible for identification. And what's your best case to support that contention that there should have been more done at that point? I just want to make sure I understand your legal argument. And then the legal argument would be Garcia versus County of Riverside. And in that case where there was a protest done by, there was a worn out for a man that had two different names. Oh, and I apologize, Your Honor. I actually, there's four things. Also, his name differs. Charles Hayes versus Devon Robinson. Those are four things out there. And in the Garcia case, there was a worn out for arrest, and that was similar names. But the height differences were extreme, nine inches, as well as there. And the court in that case said they could have done something more. And that's important because it's not saying that the initial arrest at the time that they were done so, that they could do so. But they had readily available biometrics to do so. And that's important in this case because in a subsequent arrest of the actual Devon Robinson, the Kern County officials actually requested fingerprint information, or Las Vegas people requested information about the biometrics of, such as a fingerprint. And they actually ran the fingerprint of, that they had in his possession. In particular, the California driver's license, which had his, Devon Robinson's fingerprint. And that's important here because that could have. Let me, before you run out of time, ask you a different question, and that's on qualified immunity. Because the district court also reached the qualified immunity question. But I didn't see you challenging that here in the opening brief. Why shouldn't we find that that has essentially been waived or forfeited? Your Honor, in the qualified immunity analysis, the court, district court, actually said the only reason why it was not addressed was because it was a, no constitutional violation. And that's where the analysis ended. And that's important there because that doesn't, that's why when raises on appeal, it's not waived. That this court being, reviewing this for the whole entire record, the case law is clear that Garcia versus County of Riverside falls in line in this case with these defendants. With the current county law enforcement agencies, officials, and that's the reason why it was there. So it's not waived. It's that we challenge the actual decision, which is there was no constitutional right. And then as it relates to- I see, let me make sure I understand that argument. So the district court reached qualified immunity. And your position is I don't have to raise and challenge that issue because the analysis rested only on whether there was a violation or not. That is correct. In regards to the Deputy Rojas, I'll turn to Deputy Rojas, the officer that issued the warrant. He also failed to provide any due process as it relates to the arrest and detention of Mr. Hayes. His malfeasance began when Las Vegas Metropolitan Police Department reached out to Kern County to say, is this your person? And all he did was look at a black and white picture and say, yeah, that's the guy. And the reason why this is important, because in the email it shows an alias of Mr. Hayes' real name. And also he had the DMV records. And as important as that DMV record is because he actually admits it would take no time, less than 24 hours, to actually get the fingerprint and run it to compare it. He could have done that. And in fact, the record shows when faced with this similar question, they did do that. And that shows that this is a part of the minimum due process that was not afforded to Charles. And his malfeasance continued because when he arrived on the date, when he learned of it from the prosecutor in this case, he did nothing until the following day. And you have this moment where someone says, the prosecutor informs you as you receive the warrant that we have this claim of misidentification. Something that could have happened in short order, he could have done so right then. But he waited until the prelim, and even at the preliminary hearing where the alleged, the victim of the crime actually said I don't know who he was, who this man is. And that's what led to the actual investigation. But at the time there, he did not allow for him to be released there. He came back to jail and then ran his fingerprints and then released him. And that was over the following day. And that type of malfeasance is just not warranted under the Garcia case because there's minimum due process that's needed for these officials. What development is there in the record as to policies and procedures on the Monel issue? So on the Monel issue, so there's multiple things with the Monel claim. One, it's a systematic failure. One, as it relates to all the booking process and identification process at the jail is diffused amongst a lot of individuals. And where there's- And that's why I asked you whether during the discovery process, whether there's been some development of the record in terms of policies and procedures or evidence of absence of policies and procedures where perhaps there should be. In regards to the absence of a policy, during extradition pickups, such as the one here, Kern County doesn't require the officers to review the paperwork. So that leaves the officers not having a responsibility. They're just picking up someone and taking them to the jail. There's no requirement for them to review the actual court order, the paperwork, and make sure they have the right person. And that's important because these people are human beings, and I believe one would say that we track a lot of packages with these people. Well, he conceded to extradition, though, right? Are they entitled to rely on that? He, Mr. Hayes was misconfused about what happened at that extradition hearing. And in the record, it shows that Mr. Hayes- But in the end, he wanted to be transported. He wanted, or he agreed to be extradited. Does that have any sort of binding force for the officers? When somebody's carrying an identification that purports to be theirs, they have a court appearance, and then they said, yes, I do want to be extradited. So essentially, admitting to his identity as matching the identity card that he's carrying, or the driver's license that he's carrying, that has some force for the officers, right? They don't have to question everything that a suspect in custody tells them. Yes, but that as it relates to the Las Vegas Metropolitan officers, in that case, in that thing, in that matter, the issue is arising as what Charles did. Charles complained, and the record shows in the Las Vegas proceedings and in this record, that his name was reflected to change it. And the reason why I bring that up is because there was no attorney available at that time during the extradition hearing, and he did not understand what was going on during that process. And that's why he signed his name, Charles Hayes. And in regards to the other policies there, the booking clerk doesn't have a responsibility of actually alerting someone of an error. There's no policy there. And then our- I know you wanted to save time, but I've got one question for you. So assuming that we, and the panel hasn't conferred on this case, but assuming that we think that the factual record potentially creates some tribal issues, do we then send it back to the district court to analyze the clearly established prong under the qualified immunity analysis in the first instance? I believe the court, the court does not have to do so, but it can't, because Garcia is there. But the court can submit it for them to make that factual finding, to say that there was clearly established law. But since it's reviewing de novo here, it's clear that the Garcia versus County of Riverside case applies, and therefore the clearly established right is addressed there. And I will reserve the rest of your time. If there's any further questions, I actually take those and then before. All right. Thank you, counsel. Good morning. May it please the court. Kathleen Rivera, Kern County Council, on behalf of the Kern County appellees. I'd like to begin by addressing some of the points made by my colleague on the opposing side. First, my colleague on the opposing side suggested this court that the roles of the transport deputies, Banks and Clawwitter, and recall they were the ones who went to Las Vegas to retrieve appellant. That their roles are similar to the role of Brandy Herold, who was the booking clerk. Those roles are not similar. And I don't want you to compare the two roles. I want you to talk about Ms. Herold. Why was it proper to dismiss her? It was proper to dismiss Brandy Herold because the claim against her was a 14th Amendment claim. And as the court is aware, the 14th Amendment in a misidentification case requires that there are, that there, further investigation should have been done in the presence of significant physical differences. And that's why I wanted to make sure that I understood their argument. Honestly, counsel, I'm just trying to figure this out. And that's why I wanted to be clear I understood what their arguments were. And they indicated in their, in our previous discussion, it was the five inch difference in height. It was the 40 pounds difference in weight. It was the fact that he indicated that he wasn't Mr. Robinson. And of course, visually, there was that aspect of it, I imagine, because one was standing in front of them and they had a picture. So distinguish the cases because I'm looking at the cases like Gant, for example, where there was a 5'6", 180 pound Hispanic who was mistaken for a 6'1", 180 pound Hispanic male. So I'm trying to distinguish and I can't, I'm not sure I find, I'm finding cases that are distinguishable. Yes, thank you for that question. So back to the point of why did the district court rule correctly in dismissing Brandy Herold or granting the summary judgment in favor of Brandy Herold? First, to that point of weight. That is not an uncontested fact that the appellant weighed 140 pounds, as my colleague on the opposing side suggested. In fact, the district court found that it is undisputed that the appellant weighed 160 pounds. And this is borne out by the following. Recall that the appellant was released from Kern County Jail on January 15, 2019. The next day, he applied for an ID card in California. Right, the weight was, the weight differential was less. Yes, but the height. Right. He listed his weight as 160. Therefore, the weight difference was 20 pounds. Because recall, he'd been arrested in Las Vegas just a few months before in November. So this argument that it's undisputed that he was 140 pounds. And also, the district court took into account the appellant's deposition testimony, where he was asked what did he weigh at the time of this incident. He said 140, 150, my weight might have gone up. So the district court correctly relied on the ID card that was obtained the day after he was released, stating 160. So if we take a 20-pound weight difference, or 25-pound weight difference, if the ID, excuse me, the driver's license of Robertson listed 185. So to your point, Judge Mendoza, the case law that you cite, for example, Gantt, the district court addressed Gantt. Further investigation was warranted there because there was a 7-inch height difference. Here we had a 5-inch height difference. The district court also looked at Rodriguez v. Farrell, an 11th Circuit case. You're saying that 7 inches was enough to investigate, yet 5 inches is not. Well, the important point is that the district court stated that appellant had not put forth any case on these facts of the height and weight difference and the claims of innocence where to support appellant's argument that there was a violation of 14th Amendment rights. That was at the motion for summary judgment stage. In this appeal, appellant still has not taken that opportunity to put forth a case on these facts showing that there was a 14th Amendment violation. You didn't answer my question, and maybe I asked it poorly, so I'll put it on me. You're saying that the 5 inches in this case was not sufficient for her to have done the additional investigation in addition to the other factors that, you know, even if we're talking about a 20-pound difference, 5 inches difference, that those other things are insufficient is your position? Yes, that is my position because, as Your Honor just mentioned, it's the other facts that confronted Brandy Herold. Number one, his name was listed as Devon Robinson, aka Charles Hayes. So even assuming that he was standing at the booking counter saying, this is not me, or my name is Charles Hayes, that was indicated in the booking information at Kern County. Number two, as Your Honor correctly pointed out, the booking clerk, Brandy Herold, as well as the transport deputies, Banks and Clauwitter, were informed that the appellant consented to extradition, didn't fight extradition, and it is true that the facts of the extradition hearing were not known to those parties, but it's important to point out that at that extradition hearing, his name was called. He was asked to identify himself as Devon Robinson. Counsel, you're arguing a different point that might be relevant to other individuals, but not as to Ms. Herold. Yes, yes. That's the issue that I'd like you to focus on. Certainly, and as far as the case law, back to your question, what the district court considered, Rodriguez versus Farrell, 11th Circuit, a mistaken estimate of no more than five inches does not equal a constitutional violation. White versus Oleg from the 7th Circuit, holding that a difference of five inches and race confusion did not invalidate the arrest. What circuit was that? That was the 7th Circuit, White versus... Not our circuit. Not our circuit. Counsel, on the other side, suggests that Garcia is controlling here. Garcia is not controlling. It is not helpful to his case. In Garcia, the arrestee had two forms of ID on him. That wasn't the case here. The appellant in this case had the only ID on him was for Devon Robinson. That's why he was booked as Devon Robinson in Las Vegas. In Garcia, the difference was nine inches and 40 pounds heavier. Garcia is not as helpful in this case as my colleague on the other side suggests. I also would like to point out Cameron versus Brown, 9th Circuit, where the plaintiff did not match the physical description of the female perpetrator provided by the witness and had a height and weight difference of six inches and 15 pounds. In there, the court held that a reasonable jury could find that a height difference of six inches for a woman is, at a minimum, a red flag and should have led officers to question whether the person described in the incident was the plaintiff. That case, again, was decided under the facts of differences in height for women. But the district court did consider that. Let me ask you this. If we disagree with you and find that Garcia is the clearly established law, given the record here, are there factual issues that would require this case to go to trial rather than be resolved on summary judgment? Well, it's my position that there are no factual issues that prevent summary judgment from being granted. Well, the height difference, the height difference, the weight difference, the repeated protestations. I'm talking about the booking. Yes, yes, yes. The booking officer. Now, the protestations on mistaken identity. Right, right. Well, keep in mind... Are those questions a fact that the jury decide? Well, I think a reasonable booking officer would have followed up on this. Right. The important point to remember is that in cases of mistaken identity, the court in Rivera versus the County of Los Angeles has said that in these cases of mistaken identity, where there is a requirement to conduct further investigation, which would, as your Honor suggests, be a question of fact for the jury. In those cases, there's usually significant physical differences. I submit that these physical differences, while they exist, are not significant and taken in the context of the rest of the information. But the physical differences, I think there's something there. Maybe it's on the edge of whether it should go to the jury. But you're facing somebody who's saying, this is not me. Right. The mom's coming in, providing identifications. As to the mom... We have to look at those facts as well. Yes. As to the mom... Reviewing them in the plaintiff's favor. Yes. And as to the mom, let me address that really quick. So remember that after the appellant came to Kern County, he had his arraignment on, I believe, January 2nd or 3rd. After that point, when a judge has found that this is this person, the duty to investigate is severely reduced. Because a court has found that this person is being held on probable cause. So assuming, taking the facts in the light most favorable to the appellant, that the mother did come and complain, a court order already existed that he was Devon Robinson. And back to your point as to whether there's factual facts that mandate that this case go to the jury and back to Brandy Herold. Keep in mind that we have to look at this in the context of what case law requires. And claims of misidentity are common in the jailhouse setting. As the court said in Rivera v. County of Los Angeles, claims of innocence are common and unsupported claims of mistaken identity by themselves do not trigger a duty to investigate further. Now, of course, there were other facts here besides the claims of identity. But Farber v. City of Los Angeles said that Farber's protests of mistaken identity do not make the officer's belief unreasonable. So we have to, and let me also point out that Rivera v. County of Los Angeles also said that claims of innocence are common in jails. A jailer need not independently investigate all uncorroborated claims of innocence if the suspect will soon have the opportunity to assert his claims in front of a judge. Hill v. California, the U.S. Supreme Court said, aliases and false identifications are not uncommon. So for Brandy Herold, the obligation was not on her to ask for appellant's fingerprints to run. It's uncontested that Brandy Herold did not have that ability. She's a booking clerk. But presumably she could have asked someone to run his fingerprints. But the fact that he was booked as Devon Robinson, aka Charles Hayes, if he was making that claim of mistaken identity, it was reflected right there. Second of all, let's keep in mind the similar physical characteristics. Both black men, both black hair, brown eyes, similar age. Their age difference was only three years. And that's from the, Robinson was born in 1988 and the appellant was born in 1991. The booking photo of the appellant in Las Vegas showed hair just below his shoulders in dreadlock braids. The driver's license photo of Robinson showed hair just above his shoulders in dreadlock braids. So those are very similar physical characteristics. So when talking about the differences, we also have to look at the similarities. Before my time expires, I did want to address the point of qualified immunity. I submit that that is most certainly waived. As I pointed out in my brief, issues must be argued distinctly and specifically in the party's opening brief in order to obtain review. Qualified immunity was decided by the district court and was not addressed at all in appellant's opening brief. What was the district court's decision on qualified immunity? The district court reasoned that the, all of the individual defendants were entitled to qualified immunity based on essentially the same analysis that the case law analysis that the district court did shows that there is no case on point that would put these individual defendants on notice that the actions they were taking would infringe on the appellant's 14th Amendment rights. And I do want to also address the Monell point very quickly. Your Honor's correct that there's a dearth of support in the record for policy or procedure. Appellant's brief does talk about training. As the court's well aware, a Monell case on training is the most difficult to sustain and there was no discovery done. There was no deposition of a training officer. So the Ninth Circuit in the Las Vegas case, I want to point out, did find, it obviously ruled in favor of all the Las Vegas defendants and it stated since there was no constitutional violation that they didn't have to address the Monell claim. And I suggest this court can do the same. I'd ask the court to sustain the grant of summary judgment. Thank you so much. Thank you. So I'll start my time again. In regard to the question about the qualified immunity is that the court's exact ruling is found is that as discussed above, the court finds that no reasonable jury could find plaintiff's Fourth Amendment rights violated. Therefore, there is no qualified immunity applies. And that's indicative of why this court can reverse and consider the qualified immunity by applying the case law mentioned in the brief and mentioned in oral argument. When I went next to answer the- But why shouldn't we conclude that you waived any argument on qualified immunity because you never raised it? Because I argued that the court, there was no analysis to argue as it relates to the court other than saying the court's decision was based on no constitutional violation. And now on appeal, seeing this matter on de novo, its appellant's position is that on appeal, challenging that there was a constitutional violation inherently challenges the court's decision. To one point, the court's ruling, the statement is dicta. And also I want to make sure that I answer the question about the policies. I like the court to look through 261 to 262 as it relates to Kern County's deficient policies, as it relates to what they do not allow as requiring its officers to do. And in regards to the driver's license, this court should not give credence to that because there's nothing in the record that shows any statement that there was a renewal of this evidence. There's nothing about the driver's license. Driver's license being reissued does not mean someone applied. And there's nothing in the record that said he applied and put this information there. And it would be simply hearsay. Nothing, thank you. All right, thank you very much for your very helpful arguments today. The matter is submitted and we'll issue a decision in this case in due course. That concludes our calendar for the week. Court is adjourned. All rise. This court for this session stands adjourned.
judges: TASHIMA, NGUYEN, MENDOZA